UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NICHOLAS R. SANTANGELO,

                          Plaintiff,

          -against-                                         **MEMORANDUM & ORDER**

                                                           16-CV-5604 (PKC) (LB)

THE CITY OF NEW YORK, WILLIAM DE
BLASIO, Mayor; and JOSEPH PONTE,
Commissioner, NEW YORK CITY
DEPARTMENT OF CORRECTION,

                          Defendants.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

 Plaintiff Nicholas R. Santangelo ("Plaintiff"), appearing *pro se*, brings this action pursuant

to 42 U.S.C. § 1983 and New York law seeking damages based on the termination of his

employment as the Director of Labor Relations of the New York City Department of Correction

("DOC").  Before the Court are Defendants' motion to dismiss the Amended Complaint and

Plaintiff's cross-motion for leave to file a second amended complaint ("Second Amended

Complaint" or "SAC"), which Defendants oppose as futile.  In his proposed SAC, Plaintiff alleges

that the DOC's termination of his employment without cause, without an evidentiary hearing, and

without giving Plaintiff certain benefits accruing to permanent employees, amounted to a breach

of contract and violated the New York Civil Service Law and Plaintiff's rights under the U.S.

Constitution, the latter of which he seeks to enforce through 42 U.S.C. § 1983.  For the reasons set

forth below, the Court grants Plaintiff's motion for leave to file the SAC, construes Defendants'

motion as a motion to dismiss the SAC, and grants in part and denies in part Defendants' motion.

The majority of Plaintiff's claims are dismissed, but discovery shall proceed on Plaintiff's claims

for breach of contract and denial of procedural due process under 42 U.S.C. § 1983.

# BACKGROUND

## I. Facts[1]

In December 1998, Plaintiff began working as the Director of Labor Relations for the DOC as a provisional civil servant, with the service title of Administrative Staff Analyst. (SAC ¶ 5.) In 2009, in an effort to obtain certain benefits associated with becoming a "permanent" civil servant, Plaintiff took a public service examination for the position of Principal Administrative Associate. (SAC ¶ 24b.) Plaintiff did not take the examination in order to obtain a new functional position with the DOC or any other New York City agency; rather, he was seeking appointment to an "underlying" permanent position with the service title of Principal Administrative Associate ("PAA"), which he would serve concurrently with his functional, provisional position as the Director of Labor Relations for the DOC. (SAC ¶ 39.) In other words, upon appointment to the PAA position, Plaintiff's responsibilities as the Director of Labor Relations for the DOC would not change, but, by virtue of his parallel appointment to a permanent position, he would enjoy the status of a "permanent" civil servant of the DOC, which included certain benefits and protections that Plaintiff did not enjoy as a purely "provisional" employee. (SAC ¶¶ 39, 62, 74.)

Plaintiff passed the qualifying examination for the permanent PAA position and was slated for further consideration through an interview process that was scheduled to begin in November 2011. (SAC ¶ 24b.) Before that interview process occurred, the Deputy Commissioner for Human Resources, Alan Vengersky, notified Plaintiff that he did not need to sit for an interview because

---

[1] Except as otherwise noted, the Court draws all relevant allegations from Plaintiff's Second Amended Complaint (Dkt. 7-3). *See EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) ("[W]e accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.").

the DOC had decided to appoint Plaintiff to the PAA position through an alternative procedure called "DP72." (SAC ¶ 24b.) Vengersky told Plaintiff that, via the DP72 process, Plaintiff would be appointed to an underlying permanent position of Principal Administrative Associate, from which Plaintiff would be placed on indefinite leave to continue serving in his provisional role as the Director of Labor Relations. (SAC ¶ 39.) In reliance on Vengersky's statements, Plaintiff did not participate in the standard interview process for the PAA appointment, deciding instead to go forward with his appointment through the more direct DP72 process. (SAC ¶ 113.)

After informing Plaintiff of his PAA appointment through the DP72 process, Vengersky provided Plaintiff with the paperwork associated with formalizing the appointment. (SAC ¶¶ 115-120.) Among the paperwork was a cover memorandum, dated December 22, 2011, which stated: "Enclosed you will find the forms needed to complete your appointment processing to the title of Principal Administrative Associate." (SAC ¶ 115.) As requested, Plaintiff promptly completed the appointment paperwork and returned it to Vengersky. (SAC ¶¶ 115-120.) When Plaintiff returned the paperwork to Vengersky, the only signature required to fully memorialize the appointment was that of Vengersky as the Deputy Commissioner for Human Resources. (SAC ¶ 120.)

Plaintiff believed that the paperwork for his PAA appointment was completed. (SAC ¶ 49.) At some point after Plaintiff submitted his paperwork, however, one of Vengersky's superiors instructed Vengersky to "abort" the decision to appoint Plaintiff to the underlying permanent PAA position because the superior officer wanted Plaintiff to remain classified as a "pure provisional" employee, allegedly to prevent Plaintiff from availing himself of the benefits associated with a permanent civil service title. (SAC ¶¶ 35, 42, 61.) As part of "aborting" the

appointment, Vengersky or another DOC official destroyed the appointment paperwork that Plaintiff had submitted to Vengersky and left no trace of the appointment paperwork (or the fact of Plaintiff's PAA appointment) in Plaintiff's personnel file. (SAC ¶ 43, 122.) Neither Vengersky nor anyone else at the DOC informed Plaintiff that his PAA appointment had been "abort[ed]." (SAC ¶ 27.)

Thereafter, while still under the impression that he had been appointed to the permanent PAA position, Plaintiff sought to further elevate his status within the civil service system by taking a service examination for a permanent position as an Associate Staff Analyst ("ASA"). (SAC ¶ 49.) Like the PAA position, the ASA position was a permanent civil service position that would give Plaintiff access to certain privileges and benefits beyond those he enjoyed by virtue of his provisional role as the Director of Labor Relations. (SAC ¶¶ 50-51.) However, while Plaintiff was in the process of interviewing for the ASA position, Plaintiff learned that the DOC would not allow Plaintiff to obtain the permanent ASA position while continuing to serve in his provisional role as the Director of Labor Relations. (SAC ¶ 54.) In effect, Plaintiff was faced with the choice of keeping his current employment status—*i.e.*, a provisional role as the Director of Labor Relations, with, he believed, an underlying permanent title of Principal Administrative Associate—or pursuing the permanent position of Associate Staff Analyst, the latter of which would pay a lower salary than his existing arrangement. (SAC ¶ 54.) Given that choice, Plaintiff withdrew himself from consideration for the ASA position. (SAC ¶ 54.) In the ensuing years, Plaintiff continued working for the DOC as the Director of Labor Relations, responsible for administering union contracts covering thousands of employees. (SAC ¶ 66.)

On July 1, 2014, about midway through Plaintiff's sixteenth year of service for the DOC, the Commissioner of the DOC, Defendant Joseph Ponte, notified Plaintiff that he was employed

at the DOC's "pleasure" and that Ponte had decided to replace Plaintiff. (SAC ¶ 12.) Ponte told Plaintiff that his decision to terminate Plaintiff's employment was based on "changes" that Ponte wanted to make at the DOC and was not a reflection of Plaintiff's competence or the quality of Plaintiff's work. (SAC ¶ 13a.) Ponte did not specify the effective date of Plaintiff's termination, but he indicated that Plaintiff would be terminated in about thirty days. (SAC ¶ 13b.)

After his meeting with Ponte, Plaintiff contacted Vengersky and asked about his appointment in 2011 to the permanent PAA position. (SAC ¶ 43.) On July 14, 2014, Vengersky revealed to Plaintiff that, on instructions from his superior officer, Vengersky had aborted Plaintiff's appointment to the permanent PAA position. (SAC ¶ 43.) When Plaintiff realized that the DOC was refusing to acknowledge his appointment to the PAA position, he asked to see his personnel file. (SAC ¶ 43.) When he examined the file, Plaintiff discovered that the file did not contain the paperwork he had completed back in 2011 for his appointment to the permanent PAA position. (SAC ¶ 43.)

A few weeks later, on August 25, 2014, Plaintiff had a meeting with Ponte, together with the Deputy Commissioner of Human Resources and the Deputy Director of Personnel. In that meeting, Plaintiff described how Vengersky had failed to honor Plaintiff's appointment to the permanent PAA position in 2011, and how the DOC had later deterred Plaintiff from pursuing a permanent ASA position. (SAC ¶¶ 24b-c.) Ponte reiterated that Plaintiff was "serving at [his] pleasure" and had to expect that he could be terminated. (SAC ¶ 22.)

On September 10, 2014, the Deputy Commissioner for Human Resources handed Plaintiff a letter dated September 9, 2014, which stated that, "due to the continuing reorganization of the Department of Correction, your services as Director of Labor Relations will no longer be required effective, close of business, Friday, September[] 12, 2014." (SAC ¶ 28.) When he received the

letter, Plaintiff asked the Deputy Commissioner whether he could remain employed with the DOC in a lower position, so that he could "remain on payroll while running out accrued leave time and extending his service [pension] credit" with the New York City Employees Retirement System ("NYCERS"). (SAC ¶ 29.) According to Plaintiff, "[h]ad [he] been appointed as a Principal Administrative Associate or Associate Staff Analyst, he would have been entitled to remain on payroll in either title after his provisional appointment was terminated." (SAC ¶ 62; *see also* SAC ¶ 74 ("Permanent civil servants, moreover, not serving 'at the pleasure' of their commissioners, may plan the use of accrued annual leave prior to separation or retirement.").) The Deputy Commissioner denied Plaintiff's request, and Plaintiff's employment with the DOC terminated on September 12, 2014. (SAC ¶¶ 28, 30.)

Plaintiff alleges that he sustained compensable injuries flowing from the DOC's termination of his employment. Plaintiff alleges that if the DOC had honored its agreement to appoint him to the permanent PAA position, Plaintiff would have been able to "remain on payroll while running out accrued leave time," which would have increased Plaintiff's pre-termination wages by at least $35,000 and his future pension benefits by about $10,000 per year. (SAC ¶¶ 47, 59, 64, 78, 124, 129.) Plaintiff also alleges that his constitutional right to "procedural . . . due process" was violated when the DOC deprived him of the permanent PAA position without adequate pre-deprivation procedure. (SAC ¶ 128.)

## II.     Procedural History

Plaintiff filed the original complaint in this action on December 8, 2015, in New York Supreme Court, Queens County. (Dkt. 7-2 ¶ 4.) The original complaint asserted claims of "fraudulent violation of civil service rights, violation of civil service rights, abusive or wrongful termination, and unjust forfeiture of accrued leave." (*Id.*) After Defendants filed a

motion to dismiss the original complaint, Plaintiff filed a First Amended Complaint ("FAC"), adding claims under 42 U.S.C. § 1983 based on alleged violations of his right to procedural and substantive due process under the Fourteenth Amendment to the U.S. Constitution. (*Id.* ¶ 5.) Defendants then removed the FAC to this Court pursuant to 28 U.S.C. § 1441 based on the federal question jurisdiction created by Plaintiff's purported claim under 42 U.S.C. § 1983. (Dkt. 1.) Following removal, Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkts. 5, 9.) While that motion was still pending, Plaintiff moved for leave to file a second amended complaint, which he attached to his motion as an exhibit. (Dkts. 7, 7-3 (SAC).) Defendants oppose Plaintiff's request for leave to amend the FAC on the ground that Plaintiff's proposed amendments are "futile." (Defs.' Reply Br. (Dkt. 11) at 9.) Defendants' motion to dismiss and Plaintiff's cross-motion to amend the FAC are now pending before the Court.

## LEGAL STANDARDS

Under Rule 15(a) of the Federal Rules of Civil Procedure ("FRCP"), leave to amend a complaint should generally be "freely granted." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). However, "a court need not grant such leave if the proposed amendment would still not state a claim, so that the amendment would be futile." *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 47 (2d Cir. 2016) (citing *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 50 (2d Cir. 1991)). The test for whether an amendment would be "futile" is the same as the test for whether a complaint can withstand a motion to dismiss pursuant to FRCP 12(b)(6). *See Thea v. Kleinhandler*, 807 F.3d 492, 496-97 (2d Cir. 2015).

To survive a motion to dismiss pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Kleinhandler*, 807 F.3d at 496-97 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, where a plaintiff is proceeding *pro se*, the complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted).

## DISCUSSION

Plaintiff's FAC asserted claims of (i) "fraudulent violation of civil service rights," (ii) "violation of civil service rights," (iii) "abusive or wrongful termination," (iv) "unjust forfeiture of accrued leave," (v) "inequitable denial of leave," and (vi) violations of 42 U.S.C. § 1983. (Dkt. 1.) The proposed Second Amended Complaint includes all of these claims and adds another theory of liability under 42 U.S.C. § 1983, as well as a claim for breach of contract under New York law. (Dkt. 7-3.) Defendants contend that the FAC and the proposed SAC both fail to state any plausible claim on which relief can be granted. (Dkts. 9-1 (Defs.' Br.), 11 (Defs.' Reply Br.).) The Court addresses each of Plaintiff's alleged claims in turn.

## I. "Fraudulent Violation of Civil Service Rights"

Plaintiff asserts a purported claim for "fraudulent violation of civil service rights" based on the DOC's failure to follow through on Plaintiff's appointment to the permanent PAA position. (SAC ¶¶ 34-47.) According to Plaintiff, the DOC's failure to honor his appointment violated his "rights" under Sections 95 and 106 of the New York Civil Service Law ("Civil Service Law"). (SAC ¶¶ 44-46.)

Plaintiff quotes the following language from Section 95 of the Civil Service Law: "It shall be the duty of all officers of the state of New York or of any civil division or city thereof to conform to and comply with and to aid in all proper ways in carrying into effect the provisions of this chapter." (SAC ¶ 44.) Plaintiff does not identify any provision of the Civil Service Law that authorizes a claim of "fraudulent violation of civil service rights" based on an agency's failure to grant an appointment to a permanent position. (*See generally* SAC.) The Court is similarly aware of none. Seemingly conceding that no such cause of action exists, Plaintiff, in his opposition brief, alternatively argues that Defendants' failure to appoint him to the permanent PAA position constituted "constructive fraud" under New York common law. (Pl.'s Br. (Dkt. 10) at 9-10.)

To plead a claim of fraud under New York law, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (N.Y. 2017) (quotation omitted). "Constructive fraud requires establishing the same elements as actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties." *E*TRADE Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009) (quotation omitted).

Plaintiff's re-fashioned claim of constructive fraud falters on at least two grounds. First, Plaintiff does not allege that Vengersky made any misrepresentation of fact on which Plaintiff relied; rather, Plaintiff alleges that Vengersky failed to follow through on the alleged promise to appoint Plaintiff to the permanent PAA position via the DP72 process. (SAC ¶ 127.) Plaintiff's purported claim for "fraud" is thus in essence a claim based on an "unfulfilled promis[e]," for which "the injured party's remedy is to sue for breach of contract," not fraud. *Brown v.*

*Lockwood*, 432 N.Y.S.2d 186, 194 (N.Y. App. Div. 1980).  Second, Plaintiff does not allege any harm that flowed from any alleged misrepresentation or omission by any Defendant, as opposed to harm flowing from the DOC's failure to honor its alleged contractual commitments. Plaintiff's claim of constructive fraud fails for this additional reason.  *See Connaughton*, 29 N.Y.3d at 142-43 (affirming dismissal of fraud claim where plaintiff failed to allege "recoverable out-of-pocket loss" resulting from alleged fraud).

Plaintiff also does not allege a cognizable claim under Section 106 of the Civil Service Law.  That section of the Civil Service Law makes it a *criminal misdemeanor* to "defeat, deceive or obstruct any person in respect of his or her right of examination, registration, certification, appointment, promotion or reinstatement, pursuant to the provisions of this chapter or the rules or regulations established thereunder . . . ."  N.Y. Civ. Serv. Law § 106.  But the Civil Service Law does not provide a private cause of action to sue for alleged violations of Section 106.  *See* N.Y. Civ. Serv. Law §§ 1 *et seq.*  Plaintiff suggests that this Court should recognize an implied private right of action under Section 106.  (Pl.'s Br. at 17-18.)  However, for the reasons stated in the thorough opinion issued in *Goddard v. Martino*, 40 Misc. 3d 1050 (N.Y. Sup. Ct. 2013), the Court declines to recognize an implied private right of action under Section 106.  *See id.* at 1057-59 (declining to recognize implied private right of action under Section 106 because, *inter alia*, "[t]here is no clear evidence that the [New York] legislature intended to expose municipalities to the risk of financial liability [to individual plaintiffs] for a violation of Civil Service Law § 106"). Moreover, as explained in *Goddard*, even if the Court were to recognize such a private cause of action, the Court would nonetheless dismiss it because the proper venue for such a claim would be a special proceeding pursuant to New York Civil Practice Law and Rules, Article 78 ("Article 78").  *See id.* at 1058-59.

For these reasons, Plaintiff's claim of "fraudulent violation of civil service rights" is dismissed.

## II. "Violation of Civil Service Rights"

As his second cause of action, Plaintiff asserts a purported claim of "violation of civil service rights." (SAC ¶¶ 48-59.) In support of this claim, Plaintiff alleges that "First Deputy Commissioner Mark Cranston . . . continued a policy of denying plaintiff a permanent title . . . in violation of Civil Service Law sections 95 and 106 and contraven[ing] the holding of the New York Court of Appeals in *Matter of City of Long Beach v. Civil Service Employees Association, Inc.*" (SAC ¶ 101.)[2] Plaintiff's allegations make clear that his supposed claim for "violation of civil service rights" is identical to his first claim for "fraudulent violation of civil service rights"; it is based on the same core facts, *i.e.*, deliberate conduct by the DOC to prevent Plaintiff from attaining a permanent title with the DOC, and the same statutory authority, *i.e.*, Sections 95 and 106 of the Civil Service Law. (SAC ¶ 101.) Accordingly, the Court dismisses Plaintiff's claim for "violation of civil service rights" on the same grounds as those supporting the Court's dismissal of Plaintiff's claim for "fraudulent violation of civil service rights." *See supra.*[3]

_____

[2] Plaintiff also alleges that First Deputy Commissioner Cranston's conduct "is shocking to the conscience [and] denied [Plaintiff] of his rights to substantive due process under the Fourteenth Amendment." (SAC ¶ 101.) This claimed violation of substantive due process is addressed *infra*, in the section addressing Plaintiff's Section 1983 claims.

[3] Plaintiff's reliance on the New York Court of Appeals' decision in *City of Long Beach v. Civil Service Employees Association, Inc.*, 8 N.Y.3d 465 (2007), is misplaced. In *City of Long Beach*, the New York Court of Appeals held that a contract purporting to grant "tenure" protections to a provisional civil servant were void as against public policy. *Id.* at 471 ("The statutory scheme [of the Civil Service Law] prohibits any right of tenure to provisional employees."). To be sure, as Plaintiff rightly observes, the *City of Long Beach* court observed that "[t]he Civil Service Law . . . clearly sets a time limitation on provisional appointments and that period is nine months." *Id.* (citing N.Y. Civ. Serv. Law § 65). But, crucially, the *City of Long Beach* court did not establish a private right of action to enforce or seek damages for violations of the nine-month term limit, let alone hold that such a private action could be brought in court in the first instance, as opposed to an Article 78 proceeding. *See id.* Thus, while lending some general credence to Plaintiff's

## III. "Abusive or Wrongful Termination"

Plaintiff next alleges a claim for "abusive or wrongful termination." (SAC ¶¶ 60-64.) As Defendants correctly argue, however, "New York does not recognize a cause of action in tort for abusive or wrongful discharge of an at-will employee." (Defs.' Br. at 11 (quoting *Daub v. Future Tech Enter., Inc.*, 65 A.D.3d 1004, 1005 (N.Y. App. Div. 2009))); *see also Sullivan v. Harnisch*, 969 N.E.2d 758, 760 (N.Y. 2012) ("[A]bsent violation of a constitutional requirement, statute or contract, 'an employer's right at any time to terminate an employment at will remains unimpaired.'" (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983))); *Murphy*, 448 N.E.2d at 90 ("[W]e conclude that recognition in New York State of tort liability for what has become known as abusive or wrongful discharge should await legislative action."). Under this line of authority, any rights that Plaintiff possessed with respect to retaining his employment with the DOC arose from contract, not any fundamental principle of New York common law. *See Murphy*, 448 N.E.2d at 90; *Sullivan*, 969 N.E.2d at 760. Accordingly, the Court dismisses Plaintiff's claim for "abusive or wrongful termination."

## IV. "Unjust Forfeiture of Accrued Leave"

Plaintiff next alleges a claim for "unjust forfeiture of accrued leave" based on the lump-sum payment that Plaintiff received upon his termination from the DOC in compensation for his accrued leave. (SAC ¶¶ 65-78.) Plaintiff asserts that the DOC's payment of a lump sum, as opposed to allowing Plaintiff to exhaust his accrued leave before his termination became effective, shortchanged Plaintiff by approximately $35,000. (SAC ¶¶ 74-75.) Plaintiff argues that it would

---

criticism of the DOC for extending his "provisional" employment far beyond the nine-month limit, *City of Long Beach* does not address the legal hurdles that, as discussed above, are fatal to Plaintiff's claim for "violation of civil service rights."

be "unjust" to allow the DOC to "misappropriate[]" Plaintiff's accrued leave in this way, such that an equitable remedy must be imposed. (SAC ¶¶ 77-78.)

Although styled as an equitable claim for "unjust forfeiture," this claim is clearly predicated on allegations that the DOC failed to follow the proper administrative rules and regulations in calculating the termination payout for Plaintiff's accrued leave. (*See* SAC ¶¶ 65-78 (citing N.Y.C. Personnel Service Bulletin 420-3, DOC Rule 3.10.160, N.Y.C. Personnel Service Bulletin 420-4, N.Y.C. Comptroller's Directive 14, and N.Y.C. Personnel Rule 5.5.2).)[4] As such, this claim amounts to an alleged violation of the DOC's own procedural rules and regulations, which means Plaintiff was required to bring this claim in an Article 78 proceeding, not in a civil action in court. *See, e.g.*, *Meyers v. City of N.Y.*, 208 A.D.2d 258, 264 (N.Y. App. Div. 1995) (holding that "State law claims based on the DOC's failure to follow its [own] procedural rule[s] . . . were required to be brought in a proceeding pursuant to [A]rticle 78"); *Adams v. City of N.Y.*, 271 A.D.2d 341, 341 (N.Y. App. Div. 2000) (holding that where "the relief actually being sought is to compel [the agency] to discharge a duty in conformity with its personnel policies and

---

[4] There is one aspect of Plaintiff's "unjust forfeiture" claim that does not rest on the DOC's implementation of its administrative rules and regulations. Plaintiff alleges that "[p]ermanent civil servants . . . not serving 'at the pleasure' of their commissioners . . . may plan the use of accrued annual leave prior to separation or retirement." (SAC ¶ 74.) Reading this allegation in the light most favorable to Plaintiff, the Court construes Plaintiff's argument to be that he had a right, arising from his contract for permanent employment with the DOC, that entitled him to use his accrued leave, and be paid in full for that leave, in advance of his termination. However, because any such right would arise principally from a contract for permanent employment, the proper legal claim to enforce that right would be a claim for breach of contract, not an equitable claim for "unjust forfeiture of accrued leave." *Cf. Ga. Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012) ("The theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties*." (internal quotation marks omitted; emphasis added)).

procedures, . . . plaintiffs must invoke the procedural requirements of [A]rticle 78"). Accordingly, Plaintiff's claim for "unjust forfeiture of accrued leave" is dismissed.[5]

## V.     Breach of Contract

Plaintiff next alleges a claim for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation omitted). Plaintiff alleges that the DOC, through Deputy Commissioner for Human Resources Alan Vengersky, explicitly promised to appoint Plaintiff to a permanent position of Principal Administrative Associate in exchange for Plaintiff's abstaining from participating in a hiring pool on November 11, 2011, and continuing to work for the DOC in the role of Director of Labor Relations. (SAC ¶¶ 108-24.) Plaintiff further alleges that he fulfilled his part of the bargain by not participating in the hiring pool on November 11, 2011, and continuing to work for the DOC in the role of Director of Labor Relations. (SAC ¶¶ 5, 113.) The DOC then breached its agreement with Plaintiff, either (i) by failing to complete the paperwork associated with Plaintiff's appointment as a permanent employee, or (ii) by completing the paperwork, but then destroying it without updating Plaintiff's employment status to reflect his appointment as a

---

[5] Plaintiff's claim for "Inequitable Denial of Leave" (SAC ¶¶ 79-93) is dismissed for largely the same reasons. In essence, this supposed claim is based on allegations that the DOC failed to comply with its own internal regulations, or, alternatively, exercised its discretion under those regulations in a manner that Plaintiff believes was "unfair." (*See id.*) To the extent Plaintiff is claiming that DOC violated its own internal regulations in a manner that denied him accrued leave, he was required to seek remedy for those violations in an Article 78 proceeding. To the extent Plaintiff is claiming that the DOC should have made adjustments to Plaintiff's employment status, or exercised its discretion under its rules and regulations in a manner that would have rewarded Plaintiff more generously for his many years of service to the DOC (*see* SAC ¶¶ 86-92), Plaintiff has failed to identify a cognizable legal right, as opposed to some general notion of fairness, that can be vindicated in court.

permanent employee, or (iii) by completing the paperwork and updating Plaintiff's status as a permanent employee, but disregarding that status in July 2016 by terminating Plaintiff's employment as if the appointment had never happened.[6]  As a result of the DOC's breach, Plaintiff did not receive the benefits of the permanent PAA position to which he was or should have been appointed, including, at a minimum, monetary damages in the form of lost wages and lost pension benefits.  (SAC ¶ 129.)  In sum, Plaintiff has alleged an explicit agreement with the DOC, under which he adequately performed, but which the DOC breached, thereby causing injury to Plaintiff.  These allegations state a claim for breach of contract.  *Eternity Global*, 375 F.3d at 177.

Defendants argue that Plaintiff has not alleged the existence of a valid contract, but rather is proceeding "on a contract by promissory estoppel," which, according to Defendants, "is not available against a governmental agency engaging in the exercise of its governmental functions," absent "an unusual factual situation."  (Defs.' Reply Br. at 9 (quoting *Adv. Refractory Techs., Inc. v. Power Auth.*, 81 N.Y.2d 670, 677 (N.Y. 1993)).)  Defendants argue further that Plaintiff has alleged nothing more than "erroneous advice by a government employee," which "does not constitute the type of unusual circumstance[s] contemplated by the exception to this general rule." (Defs.' Reply Br. at 9-10 (quoting *Amsterdam Nursing Home Corp. v. Daines*, 68 A.D.3d 1591, 1592 (N.Y. App. Div. 2009)).)

---

[6] The SAC indicates that Plaintiff does not currently have the information necessary to allege specifically when the DOC breached its agreement to appoint him to the permanent PAA position.  However, the SAC alleges facts that, taken as true, demonstrate a breach in at least one of three ways, namely, that (1) the DOC failed to complete the necessary paperwork to follow through on its agreement with Plaintiff, or (2) failed to properly update Plaintiff's status as a permanent employee, or (3) disregarded Plaintiff's status as a permanent employee when it terminated him as if he had never been appointed.  All three of these theories of breach can be plausibly inferred based on the allegations in Plaintiff's complaint, and the facts necessary to determine which of these theories is accurate, if any, is solely within the possession of Defendants.  Accordingly, Plaintiff may pursue any one or more of these theories of breach in discovery.

Defendants' arguments miss the mark. As stated above, Plaintiff alleges the existence of a bilateral contract between himself and the DOC, whereby the DOC promised to appoint Plaintiff to a permanent PAA position in exchange for Plaintiff's abstaining from participating in a hiring pool on November 11, 2011 and continuing to work for the DOC in the role of Director of Labor Relations. (SAC ¶¶ 108-24.) Plaintiff's breach of contract claim does not rest on "a contract by promissory estoppel," as Defendants now contend. (Defs.' Reply Br. at 9.) The concept of contract by promissory estoppel permits a party, in certain circumstances, to enforce a clear and unambiguous promise upon which the party "reasonably relied . . . to [his] detriment." *Wilson v. Dantas*, 80 N.E.3d 1032, 1039 (N.Y. 2017). Here, however, Plaintiff's claim rests on the existence of a bilateral agreement, which was formed when the DOC made an explicit offer to Plaintiff— namely, a promise of appointment to a permanent PAA position in exchange for the valuable consideration of Plaintiff foregoing participation in a hiring pool and continuing to work for the DOC as the Director of Labor Relations—and Plaintiff conveyed his acceptance of that offer, both orally to Deputy Commissioner Vengersky and by performing his side of the bargain. (SAC ¶¶ 115-120); *see Resetarits Const. Corp. v. Olmsted*, 118 A.D.3d 1454, 1455 (N.Y. App. Div. 2014) ("To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound.").[7]

---

[7] Having ruled that Plaintiff alleges the existence of a contract, the Court need not consider whether Plaintiff is permitted to pursue a claim against the DOC based on a theory of promissory estoppel. The Court notes, however, that the cases cited by Defendants for the proposition that promissory estoppel "is not available against a governmental agency engaging in the exercise of its governmental functions" (Defs.' Reply Br. at 9-10) do not appear directly applicable to this situation, where the "function" exercised by the DOC was a matter of hiring and firing its employees. *See Adv. Refractory Techs., Inc. v. Power Auth.*, 81 N.Y.2d 670, 677 (N.Y. 1993) (dismissing claim of promissory estoppel based on the public's supposed reliance on rate-setting by state power authority, because "[a]n authority, in setting . . . charges for the use of its facilities, [is] engaged in a governmental function" (quotation omitted)); *Amsterdam Nursing Home Corp. v. Daines*, 68 A.D.3d 1591, 1592 (N.Y. App. Div. 2009) (dismissing claim of equitable estoppel

16

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim for breach of contract.[8]

## VI. Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege two elements: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (quotation omitted). Plaintiff alleges that the DOC committed five violations of 42 U.S.C. § 1983 ("Section 1983"), which Plaintiff has divided into separate "counts." (*See* SAC ¶¶ 94-107, 125-29.) The Court construes Plaintiff's five "counts" under Section 1983 as stating only two distinct claims under Section 1983: (1) a "substantive" due process claim; and (2) a procedural due process claim.

---

based on healthcare providers' supposed reliance on Medicaid reimbursement rates set by state health authority). Furthermore, the Court notes that the Second Circuit's decision in *Ezekwo v. N.Y.C. Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir. 1991), suggests that, contrary to Defendants' assertions, a governmental agency's definitive promise to appoint someone to a specific position, "coupled with [the person's] reasonable reliance thereon, create[s] a contractual right that r[ises] to the level of a significant property interest" that can sustain a procedural due process claim under 42 U.S.C. § 1983. *Ezekwo*, 940 F.2d at 783.

[8] Defendants do not appear to argue that Plaintiff's claim for breach of contract is subject to the notice of claim requirement set forth in New York General Municipal Law ("NYGML") §§ 50-e, 50-i. (*See* Defs.' Reply Br. at 9-10.) Presumably that is because the general notice of claim requirements under NYGML §§ 50-e and 50-i apply only to actions grounded in tort and, therefore, do not apply to Plaintiff's claim for breach of contract. *See Margerum v. City of Buffalo*, 28 N.E.3d 515, 518-19 (N.Y. 2015) (holding that notice of claim requirement does not apply to actions that "are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50-i); *see also Hoydal v. City of N.Y.*, 545 N.Y.S.2d 823, 824-25 (N.Y. App. Div. 1989) ("[Where] [t]he essence of the plaintiffs' claim sounds in contract, not in tort, . . . no notice of claim [is] required to be served upon the defendant under General Municipal Law § 50-e."); *Matteawan on Main, Inc. v. City of Beacon*, 924 N.Y.S.2d 139, 140-41 (N.Y. App. Div. 2011) (holding that notice of claim requirements under Sections 50-e and 50-i do not apply to claims "sound[ing] in quasi-contract").

## A. Substantive Due Process

To state a substantive due process claim under 42 U.S.C. § 1983, a plaintiff must allege "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Cunney v. Bd. of Trs. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (quotation omitted). The bar for such claims is high; "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quotation omitted); *see also Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) ("[The conduct] must be truly 'brutal and offensive to human dignity.'" (quoting *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002))). And the Supreme Court has counseled lower courts to exercise restraint in "expand[ing] the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

For his substantive due process claim,[9] Plaintiff alleges that the DOC's active subversion of his appointment to the permanent PAA position, and subsequent termination of Plaintiff's employment without affording him the benefits of that permanent position, were actions that "shock[ed] the conscience" and, as such, "deprived [Plaintiff] of his rights to substantive due process." (SAC ¶¶ 96-107.)

As an initial matter, the Court recognizes that the harm Plaintiff alleges in this case, namely, the economic harm of losing his employment and certain benefits associated therewith, could, in theory, support a claim of substantive due process. *See Velez v. Levy*, 401 F.3d 75, 93-94 (2d Cir. 2005) (acknowledging that public official's entitlement to continued employment, absent

---

[9] Plaintiff's substantive due process claims are pleaded under the rubric of "Counts" 1 through 4.

termination for cause, could support "a valid substantive due process claim"); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (acknowledging that a zoning board's denial of construction permits could support a claim for substantive due process, if "the conduct of the defendants in denying the permits was so outrageously arbitrary as to constitute a gross abuse of governmental authority").

Here, however, the Court does not find that the particular circumstances alleged by Plaintiff are sufficient to state a claim for a violation of substantive due process. To be sure, if the DOC in fact lied to Plaintiff about his appointment and secretly destroyed the related paperwork so that the DOC could later deny the appointment altogether, that conduct may very well rise to the "conscience-shocking" level. But the nature of that conduct, whether conscience-shocking or not, does not fall within a "power [that is] unique to [the DOC's] role as a governmental entity." *Perfetto v. Erie Cty. Water Auth.*, No. 03 Civ. 439, 2006 WL 1888556, at *10 (W.D.N.Y. July 7, 2006). Indeed, the actions of which Plaintiff complains—however egregious they may be—are the same kinds of employment actions that any employer, whether public or private, could potentially take with respect to an employee. Accordingly, "[t]his is simply not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual"; thus, "the substantive component of the Due Process Clause does not provide a remedy." *McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986); *see also Mancuso v. Vill. of Pelham*, No. 15 Civ. 7895, 2016 WL 5660273, at *17-18 (S.D.N.Y. Sept. 29, 2016) (granting motion to dismiss substantive due process claim brought by employee against municipality where the municipality's alleged misconduct did not involve the abuse of "some power unique to its role as a governmental entity"). Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's substantive due process claim.

### B.  Procedural Due Process

Plaintiff also alleges a Section 1983 claim based on the DOC's alleged violation of Plaintiff's right to procedural due process.  Construed in the light most favorable to Plaintiff, the complaint alleges that the DOC violated Plaintiff's right to procedural due process when it terminated his employment and denied him certain monetary benefits associated with that employment, without providing an adequate pre-deprivation hearing.  (SAC ¶ 128.)

To state a procedural due process claim under Section 1983, a plaintiff must allege "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process."  *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012).

Construed favorably to Plaintiff, the SAC clearly pleads both of these elements.  As to the first element, "[t]he state-law property interest of government employees who may only be discharged for cause . . . is a constitutionally protected property interest for purposes of the Fourteenth Amendment."  *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005)).  Here, as explained above, Plaintiff alleges that he had a contractual entitlement for the permanent PAA position.  *See supra*.  The SAC alleges that the permanent PAA position would have conferred on Plaintiff certain protections and benefits not enjoyed by provisional employees.  Furthermore, although the SAC does not expressly say so, the Court infers, as it must at the pleadings stage, that the permanent PAA position would have qualified Plaintiff for the protections of Civil Service Law § 75, which prevents certain permanent employees from being discharged without cause.  *See* N.Y. Civ. Serv. Law § 75(1).  Accordingly, Plaintiff has satisfied the first element of this claim by alleging a "state-law property interest" of a "government employee[] who may only be discharged for cause." *Taravella*, 599 F.3d at 134.

As to the second element, "some kind of hearing is required prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Arteta v. Cty. of Orange*, 141 F. App'x 3, 7 (2d Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) (internal brackets omitted). "In general, something less than a full evidentiary hearing is sufficient prior to adverse . . . action." *Loudermill*, 470 U.S. at 545 (internal quotation marks omitted). But, at a minimum, before being terminated, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. Here, Plaintiff alleges that he received no such notice or hearing. Indeed, at the time of Plaintiff's termination, the DOC did not even treat Plaintiff as a permanent civil servant at all, but instead told Plaintiff that he was serving "at the pleasure" of the DOC and had to expect that he could be terminated at any time. (SAC ¶ 22.)

Defendants argue that Plaintiff was not entitled to any pre-termination process because "provisional employees, even those employed by a public agency, have 'no expectation of continued employment.'" (Defs.' Br. at 14 (quoting *Wilson v. N.Y.C. Hous. Auth.*, No. 05 Civ. 6538, 2007 WL 1032262, at *11 (S.D.N.Y. Mar. 30, 2007)).) In effect, Defendants' entire challenge to Plaintiff's claim of procedural due process is based on Defendants' designation of Plaintiff as a "provisional" employee. (*See* Defs.' Br. at 14-15.) But, this argument entirely ignores Plaintiff's theory of liability in this case, namely, that Plaintiff had a contractual entitlement to permanent employment as a PAA. In other words, to the extent Plaintiff has stated a plausible claim of entitlement to the permanent PAA position, he logically has also stated a plausible procedural due process claim. *See, e.g.*, *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 783 (1991).

The Court, therefore, denies Defendants' motion to dismiss Plaintiff's Section 1983 procedural due process claim. Discovery shall proceed on the theory that the DOC violated Plaintiff's right to procedural due process when it terminated his employment and denied him certain monetary benefits associated with that employment, without providing an adequate pre-deprivation hearing.

**CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for leave to file the Second Amended Complaint and construes Defendants' motion to dismiss as seeking dismissal of the Second Amended Complaint. The Court grants Defendants' motion to dismiss Plaintiff's claims for (i) "fraudulent violation of civil service rights," (ii) "violation of civil service rights," (iii) "abusive or wrongful termination," (iv) "unjust forfeiture of accrued leave," (v) "inequitable denial of leave," and (vi) substantive due process under 42 U.S.C. § 1983. The Court otherwise denies Defendants' motion. Discovery shall proceed on Plaintiff's claims of (i) breach of contract, and (ii) procedural due process under 42 U.S.C. § 1983.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: September 29, 2017
      Brooklyn, New York